UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WENDELL SMITH,

                        Plaintiff,                  Case # 17-CV-6344-FPG

v.                                                    DECISION AND ORDER

MICHAEL MUMM,

                        Defendant.
_____

## INTRODUCTION

*Pro se* Plaintiff Wendell Smith brings this civil rights action against Defendant Michael Mumm for malicious prosecution. On December 4, 2019, Mumm filed a motion for summary judgment. ECF No. 49. Smith opposes the motion. ECF No. 58. For the reasons that follow, Mumm's motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

**BACKGROUND**

Smith's claim against Mumm arises from his arrest for shoplifting at Marketplace Mall on September 23, 2014. The parties allege a conflicting series of events.

Smith alleges that he visited the mall to go shopping. ECF No. 8 at 29; ECF No. 60 at 4. He went to several stores, including Macy's, where he purchased a number of items. After shopping, he left the mall and began to walk to a nearby bus stop. Suddenly, he heard someone order him to "stop, freeze, and drop [his] bags." *Id.* Smith claims that Mumm, a deputy sheriff with the Monroe County Sheriff's Office, is the officer who accosted him. Mumm placed Smith under arrest and detained him in a police cruiser. While in the vehicle, Smith noticed Mumm detain another person—whom Smith did know—in a different cruiser.

At some point, another officer told Smith that he would be charged for the drugs they found in a nearby vehicle. Smith protested that he had no connection to that vehicle. Smith alleges that officers harassed him for some time before Mumm ultimately charged Smith with petit larceny and released him on an appearance ticket. The charge was later dismissed.

Mumm offers a different version of the events. He alleges that at approximately 5:00 p.m., he responded to Marketplace Mall based on a report from Macy's security that two individuals had shoplifted. ECF No. 49-2 at 1. When he first arrived, Mumm saw mall security officer Kevin Zona outside the mall entrance next to an unoccupied black vehicle. Zona told Mumm that he had received a shoplifting report from Macy's security and had observed an individual matching security's description leave the mall, place two Macy's bags into the trunk of a black vehicle, and enter the vehicle. That individual had then driven around to another entrance, parked the vehicle, and re-entered the mall. Zona told Mumm that Macy's security was inside the mall with the two suspects.

Mumm went inside and spoke with Macy's security officer Mark Ponder, who was detaining two individuals—later identified as Smith and Raysean Brown. Mumm took Brown outside to Zona, who identified Brown as the driver of the black vehicle. Mumm questioned Brown and Smith about the black vehicle. Initially, they both denied any connection to the vehicle, but Brown later admitted that Smith had rented the car as a rental vehicle. Smith maintained that he did not know Brown, however.

Another deputy searched the black vehicle and found some of the items alleged to have been stolen. Mumm also alleges that "[s]tolen property was . . . located in the possession of Mr. Smith and identified by Mr. Ponder." *Id.* at 3.

Mumm avers, "I relied upon the information provided to me by witnesses [Ponder and Zona], as well as discovering stolen items in the black Toyota and in the possession of Mr. Smith for probable cause for the charge of Petit Larceny." ECF No. 49-2 at 3.

## DISCUSSION

Smith brings one claim of malicious prosecution against Mumm.[1] Mumm argues that he is entitled to summary judgment on that claim because the undisputed facts prove he had probable cause to issue Smith an appearance ticket for petit larceny. The Court agrees.[2]

---

[1] The Court previously dismissed Smith's false arrest claim as time-barred. *See* ECF No. 33.

[2] In a text order dated December 11, 2019, the Court noted that Mumm's motion may be untimely under the scheduling order. *See* ECF Nos. 39, 52. The Court will not deny the motion on that basis. On November 6, 2019, Mumm timely requested an extension of time to file his summary judgment motion. ECF No. 47. A few days later, pretrial matters were assigned to a different Magistrate Judge, and the request was not thereafter acted upon. After realizing that the request had not been granted, Mumm's counsel filed the present motion. *See* ECF No. 55. Given the unusual circumstances, as well as the lack of prejudice to Smith, the court will reach the merits of Mumm's motion. *See also* Fed. R. Civ. P. 16(b)(4).

"To state a 42 U.S.C. § 1983 claim for malicious prosecution, a plaintiff must plead both a violation of his rights under the Fourth Amendment and the elements of a malicious prosecution claim under state law." *Rosario v. City of New York*, No. 18-CV-4023, 2019 WL 4450685, at *4 (S.D.N.Y. Sept. 16, 2019). Courts look to state tort law in elaborating the federal standard for malicious prosecution. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). One essential element of a malicious prosecution claim is the "lack of probable cause for commencing the proceeding." *Rosario*, 2019 WL 4450685, at *4.

"Although the existence of probable cause must be determined with reference to the facts of each case, in general probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal brackets and quotation marks omitted). "The existence of probable cause must be determined by reference to the totality of the circumstances." *Id.* Importantly, probable cause may even exist "where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it." *Id.*

In this case, the undisputed facts establish that Mumm had probable cause to issue an appearance ticket to Smith for petit larceny. It must be emphasized that Smith agrees with much of Mumm's version of the events. He agrees that Macy's security told Zona there were two shoplifters, one of whom was leaving the mall. ECF No. 58 at 1. He does not dispute that Zona observed Brown leave the mall, place two Macy's bags in the black vehicle, get into the vehicle, drive to another entrance, and re-enter the mall. He agrees that Zona later identified Brown as the man who had driven the black vehicle. He agrees that a deputy discovered two Macy's bags in

4

the black vehicle that Ponder identified as the stolen property. And Smith does not appear to dispute that Mumm had these facts available to him when he issued the appearance ticket.

Instead, Smith primarily disputes the manner in which he was apprehended. Smith states that Mumm accosted him outside the mall at gunpoint, placed him in the back of a police cruiser, and then, after some period of time, released him on an appearance ticket. ECF No. 58 at 1-2 ECF No. 60 at 4-5. Smith also denies that mall security apprehended him, that he stole any items from Macy's, that he had any connection to the black vehicle, or that there was probable cause for the charge. *See* ECF No. 58 at 2-3.

But, even as to these denials, Smith does not dispute that Mumm *learned* the inculpatory information; he only disputes that it was *true*. For example, in his Rule 56 statement, Mumm asserts that "[s]tolen property was . . . located in the possession of [Smith] and identified by [Ponder]." ECF No. 49-1 at 2. In his counterstatement, Smith responds that "none of the items in [my] bag was stolen," but he does not dispute that Ponder *told* Mumm this. ECF No. 58 at 2. Similarly, as to Mumm's statement that Brown admitted that Smith had rented the black vehicle, Smith responds: "[T]he plaintiff disputes this paragraph to the point that the car was never a connection of the plaintiff, and there is no car rental agreements or any other documents on file that this car was a rental of the plaintiff." *Id.* Again, Smith does not dispute that Brown told Mumm otherwise. Mumm's critical assertion is that he "relied upon the information provided to him by witnesses Mark Ponder and Kevin Zona , as well as discovering stolen items in the black [vehicle] and in the possession of [] Smith for probable cause for the charge of Petit Larceny." ECF No. 49-1 at 3. To this, Smith responds only that "there was no probable cause to arrest [him] for the charge of Petit Larceny or any other charge." ECF No. 58 at 2.

5

In short, the Court understands Smith's opposition to be that the information on which Mumm based the appearance ticket was false.[3] However, as the Court previously stated, "probable cause can be based on mistaken information, as long as the police acted reasonably and in good faith in relying on the information." *Dawson v. Snow*, 356 F. App'x 526, 528-29 (2d Cir. 2009) (summary order). In this case, Mumm relied on information from two witnesses and a putative co-conspirator to conclude that Smith had, with Brown, shoplifted from Macy's. Mumm's reliance on this information was reasonable, and there is no evidence of bad faith. *See id.* at 528 (stating that "information provided by an identified citizen accusing another individual of a specific crime is legally sufficient to provide the police with probable cause to arrest"); *Daniels v. D'Aurizo*, 564 F. Supp. 2d 194, 198 (W.D.N.Y. 2008) (inculpatory statements by accomplices established probable cause for arrest). Thus, the facts before Mumm, even if ultimately untrue, gave him probable cause to issue an appearance ticket to Smith. Smith's conclusory assertion that probable cause did not exist is insufficient to create a genuine issue of material fact. *See Abreu v. Romero*, No. 08-CV-10129, 2010 WL 4615879, at *6 (S.D.N.Y. Nov. 9, 2010) ("Plaintiff's conclusory allegations that Defendants did not have probable cause to arrest, without more, provide insufficient proof to create an issue for trial.").

---

[3] The Court recognizes that it has a responsibility to liberally construe *pro se* pleadings. Nevertheless, this responsibility is "not without limits," and it is not the Court's role to create new arguments on a *pro se* litigant's behalf (particularly when such arguments would be contrary to the litigant's explicit concessions and arguments). *Roque v. Greifinger*, No. 95-CV-1075, 1996 WL 601538, at *2 (S.D.N.Y. Oct. 18, 1996). In this case, while it is clear that Smith disputes how he was apprehended and the underlying truth of the information Mumm obtained, his opposition cannot be reasonably read to assert that Mumm did not have the above-described information available to him when he issued the appearance ticket.

Because there was probable cause to issue the appearance ticket, Smith cannot satisfy an essential element of his malicious prosecution claim, and Mumm is entitled to summary judgment. *See Rosario*, 2019 WL 4450685, at *4.

## CONCLUSION

For the foregoing reasons, Defendant Mumm's motion for summary judgment (ECF No. 49) is GRANTED. Because all of Smith's claims have now been dismissed, the Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated: April 1, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT